UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES MINCKLER | * | NO: 20-1173 |
| | * | |
| VERSUS | * | |
| | * | SECTION: G |
| WATERMAN STEAMSHIP | * | JUDGE NANNETTE JOLIVETTE |
| | * | BROWN |
| CORPORATION, ET AL | * | JUDGE   DONNA   PHILLIPS |
| CURRAULT | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>PLAINTIFF'S PROPOSED JURY CHARGES</u>

NOW INTO COURT, through undersigned counsel, comes plaintiff, JAMES

MINCKLER, who submits the following Proposed Jury Charges to be submitted to the jury

in this matter.

Respectfully Submitted,

*s/ Joseph B. Marino, III*
TIMOTHY J. YOUNG (22677)
TAMMY D. HARRIS (29896)
MEGAN C. MISKO (29803)
JOSEPH B. MARINO, III (29966)
**THE YOUNG FIRM**
400 Poydras Street, Suite 2090
New Orleans, LA 70130
Telephone: (504) 680-4100
Facsimile: (504) 680-4101
TJY@theyoungfirm.com
TDH@theyoungfirm.com
MCM@theyoungfirm.com
JBM@theyoungfirm.com
*Attorneys for plaintiff, James Minckler*

**PROPOSED JURY INSTRUCTION NO. 1**

**JONES ACT—UNSEAWORTHINESS – MAINTENANCE AND CURE**[1]

Plaintiff, James Minckler, a seaman, is asserting three separate claims against Waterman Steamship Corp. and Seabulk Fleet Management, LLC.

Plaintiff, James Minckler's, first claim, under the federal law known as the Jones Act, is that his employers, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, were negligent, and that this negligence was a cause of his injuries. Plaintiff, James Minckler's, second claim is that unseaworthiness of a vessel caused his injuries. Plaintiff, James Minckler's, third claim is for what is called maintenance and cure.

You must consider each of these claims separately. Plaintiff, James Minckler, is not required to prove all of these claims. He may recover if he proves any one of them. However, he may recover only those damages or benefits that the law provides for the claims that he proves, and he may not recover the same damages or benefits more than once.

---

[1] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) § 4.3.

## PROPOSED JURY INSTRUCTION NO. 2

## JONES ACT—NEGLIGENCE[2]

Under the Jones Act, Plaintiff, James Minckler, must prove that his employer was negligent. Negligence is doing an act that a reasonably prudent person would not do, or failing to do something that a reasonably prudent person would do, under the same or similar circumstances. The occurrence of an accident, standing alone, does not mean that anyone was negligent or that anyone's negligence caused the accident.

In a Jones Act claim, the word "negligence" is liberally interpreted. It includes any breach of duty that an employer owes to its employees who are seamen, including the duty of providing for the safety of the crew. Under the Jones Act, if the employer's negligent act was the cause, in whole or in part, of injury to a seaman employee, then you must find that the employer is liable under the Jones Act.[3] In other words, under the Jones Act, Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, bear the responsibility for any negligence that played a part, however slight, in

---

[2] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) §4.4.
[3] In *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994), the Supreme Court held that a railroad's duty under FELA to provide its employees with a safe place to work includes a duty to avoid subjecting its workers to negligently inflicted emotional injury. The Court ruled that "injury" as used in that statute may encompass both physical and emotional injury. The Court also stated that a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, but a worker outside the zone of danger will not. Because FELA standards have been carried into the Jones Act, this zone-of-danger standard applies to Jones Act claims as well as FELA claims. In Jones Act cases in which a plaintiff sues for purely emotional injury, without physical impact but within the zone of danger, the jury should be instructed accordingly. Whether a reasonable person under the circumstances would have had a fear of physical impact is a question for the jury

causing Plaintiff, James Minckler's injury.[4] Negligence may be a cause of injury even though it operates in combination with another's act or with some other cause, if the negligence played any part in causing such injury.

Negligence under the Jones Act may consist of a failure to comply with a duty required by law. Employers of seamen have a duty to provide their employees with a reasonably safe place to work. If you find that Plaintiff, James Minckler, was injured because Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, failed to furnish him with a reasonably safe place to work, and that Plaintiff, James Minckler's, working conditions could have been made safe through the exercise of reasonable care, then you must find that Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, were negligent.

The fact that Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, conducted its operations in a manner similar to that of other companies is not conclusive as to whether Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, were negligent or not.

You must determine if the operation in question was reasonably safe under the circumstances. The fact that a certain practice had been continued for a long period of time does not necessarily mean that it is reasonably safe under all circumstances. A long-accepted practice may be an unsafe practice. A practice is not necessarily unsafe or

---

[4] *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2633 (2011) (internal citations omitted).

unreasonable, however, merely because it injures someone.

A seaman's employer is legally responsible for the negligence of one of its employees while that employee is acting within the course and scope of his/her job/employment.

If you find from a preponderance of the evidence that Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, assigned Plaintiff, James Minckler, to perform a task that Plaintiff, James Minckler, was not adequately trained to perform, you must find that Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, were negligent.

## PROPOSED JURY INSTRUCTION NO. 3

## JONES ACT—NEGLIGENCE

In addition to Pattern Jury Instruction 4.4, plaintiff submits that the following instruction is appropriate and should be read in addition to Pattern Jury Charge 4.4:

Jones Act employers have an absolute and non-delegable duty to provide a seaman with a safe place to work.[5]

---

[5] *Alexander v. Global Fabrication, L.L.C.*, 2011 WL 2899124 (E.D.La. 2011); *Johnson v. Blue Marlin Services of Acadia*, 713 F.Supp2d 592 (E.D.La. 2010) citing *Sanford v. Caswell*, 200 F.2d 830 (5 Cir. 1953); *Mier v. Wood Towing, L.L.C.*, 2009 WL 2922315 (E.D.La. 2009) citing *Martin, Walk, Haydel & Associates, Inc.*, 742 F.2d 246 (5th Cir. 1984).

## PROPOSED JURY INSTRUCTION NO. 4

### JONES ACT—NEGLIGENCE

In addition to Pattern Jury Instruction 4.4, plaintiff submits that the following instruction is appropriate and should be read in addition to Pattern Jury Charge 4.4:

Although a seaman does have a duty to use reasonable care, this duty is tempered by the realities of maritime employment.  A seaman is allowed to rely upon his employer to provide a safe work environment. [6]  In considering the experience of the plaintiff, you may find the defendant negligent if you find from a preponderance of the evidence that defendant assigned plaintiff to perform a task which he was not adequately trained to perform.[7]

---

[6] *See Gautreaux vs. Scurlock Marine, Inc.* 107 Fd.3d 331 (5th Cir. 1997).
[7] *Gautreaux v. Scurlock Marine, Inc.*, 84 F.3d 776, 780 (5th Cir.1996), reh'g en banc granted, opinion vacated in part on other grounds (July 17, 1996), opinion reinstated in part on reh'g, 107 F.3d 331 (5th Cir.1997).

## **PROPOSED JURY INSTRUCTION NO. 5**

### **JONES ACT—NEGLIGENCE**

In addition to Pattern Jury Instruction 4.4, plaintiff submits that the following instruction is appropriate and should be read in addition to Pattern Jury Charge 4.4:

An employer's negligence may arise from a dangerous condition on or about the vessel, failure to use reasonable care to provide a seaman with a safe place to work, failure to inspect the vessel for hazards and any other breach of the owner's duty of care.[8]

---

[8] *Davis vs. Hill Engineering, Inc.* 549 Fd.2d 314 (5 Cir. 1977).

## **PROPOSED JURY INSTRUCTION NO. 6**

### **JONES ACT—NEGLIGENCE**

In addition to Pattern Jury Instruction 4.4, plaintiff submits that the following instruction is appropriate and should be read in addition to Pattern Jury Charge 4.4:

The Jones Act employer has a duty to supervise or instruct seaman as to safe methods by which they can carry out orders given to them.[9]

---

[9] *Smith v. Flowers Transportation, Inc.*, 377 F.Supp. 1112 (N.D. Miss. 1974).

**<u>PROPOSED JURY INSTRUCTION NO. 7</u>**

**JONES ACT—NEGLIGENCE**

In addition to Pattern Jury Instruction 4.4, plaintiff submits that the following instruction is appropriate and should be read in addition to Pattern Jury Charge 4.4:

The owner of a vessel has a clear duty to supervise the work of a seaman under his command.  In addition, he must warn the seaman of all impending dangers of which he, the shipowner, is or should be aware, and the shipowner is chargeable with the knowledge, or lack of knowledge, of his employees.[10]

---

[10] *Olsen vs. State Line,* 378 F.2d 217 (9 Cir. 1967); *Olah v. S. S. Jaladurga,* 343 F.2d 457 (4 Cir. 1965); *Stevens v. Seacoast Co, Inc.* 414 F.2d 1032 (5 Cir. 1969).

## PROPOSED JURY INSTRUCTION NO. 8

### UNSEAWORTHINESS[11]

Plaintiff, James Minckler, seeks damages for personal injury that he claims was caused by the unseaworthiness of Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC's, vessel, the OCEAN GIANT.

A shipowner owes every member of the crew employed on its vessel the absolute duty to keep and maintain the vessel and all its decks and passageways, appliances, gear, tools, parts and equipment in a seaworthy condition at all times.

A seaworthy vessel is one that is reasonably fit for its intended use. The duty to provide a seaworthy vessel is absolute because the owner may not delegate that duty to anyone. Liability for an unseaworthy condition does not in any way depend on negligence or fault or blame. If an owner does not provide a seaworthy vessel—a vessel that is reasonably fit for its intended use—no amount of care or prudence excuses the owner.

The duty to provide a seaworthy vessel includes the duty to supply an adequate and competent crew. A vessel may be unseaworthy even though it has a numerically adequate crew, if too few persons are assigned to a given task.

However, the vessel owner is not required to furnish an accident-free ship. It need only furnish a vessel and appurtenances that are reasonably fit for the intended use and a crew that is reasonably adequate for the assigned tasks.

---

[11] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) § 4.5.

The vessel owner is not required to provide the best appliances and equipment, or the finest crews, on its vessel.  It is required to provide only gear that is reasonably proper and suitable for its intended use and a crew that is reasonably adequate.

In summary, if you find that the vessel owner did not provide an adequate crew of sufficient number to perform the tasks required, or if you find that the vessel was in any manner unfit under the law as I have explained it to you and that this was a proximate cause of the injury, a term I will explain to you, then you may find that the vessel was unseaworthy and the vessel owner liable, without considering any negligence on the part of the vessel owner or any of its employees.

However, if you find that the owner had a capable crew, and had appliances and gear that were safe and suitable for their intended use, then the vessel was not unseaworthy and Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC's, are not liable to Plaintiff, James Minckler, on the claim of unseaworthiness.

## PROPOSED JURY INSTRUCTION NO. 9

### UNSEAWORTHINESS

In addition to Pattern Jury Instruction 4.5, plaintiff submits that the following instruction is appropriate and should be read in addition to Pattern Jury Charge 4.5:

A vessel owner is responsible for the injuries of seaman that result from the unseaworthiness of the vessel. There is a very high burden on a vessel owner to provide its crew with a seaworthy ship. This duty is absolute, non-delegable and completely independent of the Jones Act requirement to exercise reasonable care. An owner's absolute duty to provide a seaworthy vessel may not be delegated to anyone. Liability for an unseaworthy condition does not depend on negligence, fault or blame. Thus, if an owner does not provide a seaworthy vessel, then no amount of prudence will excuse him, whether he knew or should have known of the unseaworthy condition.[12] It makes no difference how the unseaworthy condition arose; "unseaworthiness is a condition of the vessel, and how that condition arises has been deemed irrelevant to the owner's liability for allowing such a condition to exist."[13]

---

[12] *Foster v. Destin Trading Corp.*, 96-0803, 695 So.2d 509 (La. 1997).
[13] *Usner v. Luckenbach Overseas. Corp.*, 400 U.S. 494 (1971).

**PROPOSED JURY INSTRUCTION NO. 10**

**GENERAL MARITIME LAW NEGLIGENCE**

Negligence under the general maritime law requires proof of four elements, each of which must be proven by the plaintiff: (1) that the defendant owed a duty to the plaintiff to use due care; (2) that the defendant breached that duty; (3) that the plaintiff suffered damages; and (4) that the breach of the duty proximately caused the plaintiff's injuries.[14]

Under the general maritime law, a plaintiff is owed a duty of ordinary care under the circumstances.[15]  The scope of the duty owed is determined in relation to the foreseeability of the damages sustained.[16] Thus, the damages sustained as a result of the defendant's negligence must have been foreseeable.[17]  The test to determine whether the plaintiff's damages were foreseeable is "if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a *probable result* of the act or omission, considering the interplay of natural forces and likely human intervention."[18]

---

[14] *Ates v. B & D Contracting, Inc.*, 487 Fed.Appx. 201 (5th Cir. 2012).
[15] *Daigle v. Point Landing, Inc.,* 616 F.2d 825 (5th Cir.1980).
[16] *Consol. Aluminum Corp. v. C.F. Bean Corp.,* 833 F.2d 65 (5th Cir.1987).
[17] *Id*.
[18] *Id*.

**PROPOSED JURY INSTRUCTION NO. 11**

**GENERAL MARITIME LAW NEGLIGENCE**

Defendant and its employees have a duty under the law to act with due and reasonable care.[19] Defendant is legally responsible for the negligence of any one of its employees while that employee is acting in the course and scope of his job.[20] The test and standards for a finding of fault or negligence under general maritime law is reasonable care under the circumstances.[21] Negligence is measured by what the reasonable person or reasonable company would do or not do. In answering the question of whether defendant was negligent, you may ask whether defendant took actions or did things which a reasonable company would not have done and/or whether defendant failed to take actions or do things which a reasonable company would have done. In addition, in answering the question of whether defendant's captain was negligent, you may ask whether he took actions or did things which a reasonable person would not have done and/or whether he failed to take actions or do things which a reasonable person would have done.[22]

---

[19] *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L.Ed.2d 550 (1959); Thomas J. Schoenbaum, Admiralty and Maritime Law, 4 Ed., § 5-2.

[20] *Gautreaux v. Scurlock Marine Inc*., 107 F.3d 331, 335 (5th Cir. 1997); *see also* Gilmore & Black, The Law of Admiralty 375 (2d ed. 1975).

[21] *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

[22] *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L.Ed.2d 550 (1959); Thomas J. Schoenbaum, Admiralty and Maritime Law, 4 Ed., § 5-2.

## **PROPOSED JURY INSTRUCTION NO. 12**

### **TREATING PHYSICIAN DOCTRINE**

The diagnoses and opinions of a treating physician are entitled to more weight than are those of doctors who examined the plaintiff for only litigation purposes.[23]

---

[23] *Schouest v. J. Ray McDermott & Co., Inc.*, 411 So.2d 1042, 1044 (La. 1982); *Dauphin v. American Fire & Cas. Co.*, 2015 WL 966022 (E.D.La. 2015).

**<u>PROPOSED JURY INSTRUCTION NO. 13</u>**

**AGGRAVATION OR ACTIVATION OF DISEASE OR DEFECT**

You may award damages for aggravation of an existing disease or physical defect [or activation of any such latent condition] resulting from physical injury to the plaintiff.  If you find that there was such an aggravation, you should determine, if you can, what portion of the plaintiff's condition resulted from the aggravation and make allowance in your verdict only for the aggravation.[24]

---

[24] Former Fifth Circuit Pattern Jury Instructions (Civil Cases) § 15.5 (2006); see also W. KEETON, D. DOBBS, R. KEETON & D. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 43, at 292 (5th ed.1984).

## <u>PROPOSED JURY INSTRUCTION NO. 14</u>

## CONTRIBUTORY NEGLIGENCE

In addition to Pattern Jury Instruction 4.7, plaintiff submits that the following instruction is appropriate and should be read in addition to Pattern Jury Charge 4.7:

A seaman may not be contributorily negligent for carrying out orders that result in his own injury, even if he recognizes possible danger.[25]

---

[25] *Williams v. Brasea, Inc.* 497 F.2d 67, (5 Cir. 1974), opinion amended on denial of rehearing 513 F.2d 301, certiorari denied 96 S.Ct 207, 423 U.S. 906, 46 L.Ed.2d 136, certiorari denied *Brasea, Inc. v. Bender Welding & Machine Company, Inc.* 96 S.Ct 207, 423 U.S. 906,46 L.Ed.2d 136, appeal after remand 549 F.2d 977.

**PROPOSED JURY INSTRUCTION NO. 15**

**CAUSATION[26]**

Not every injury[27] that follows an accident necessarily results from it. The accident must be the cause of the injury.

In determining causation, different rules apply to the Jones Act claim and to the unseaworthiness claim.

Under the Jones Act, for both the employer's negligence and the seaman's contributory negligence,[28] an injury or damage is considered caused by an act or failure to act if the act or omission brought about or actually caused the injury or damage, in whole or in part. In other words, under the Jones Act, a defendant and a plaintiff each bear the responsibility for any negligence that played a part, however slight, in causing the plaintiff's injury.[29]

For the unseaworthiness claim, the seaman must show not merely that the unseaworthy condition was a cause of the injury, but that such condition was a proximate cause of the injury. This means that Plaintiff, James Minckler, must show that the condition

---

[26] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) § 4.6.

[27] *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532 (1994), discussing claims for purely emotional injuries within the zone of danger of physical impact. If a claim for purely emotional injuries is made, without physical impact but within the zone of danger that causes a fear of physical impact, then an instruction should be given consistent with *Gottshall*. *See also* Pattern Instruction 4.4.

[28] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc).

[29] *CSX Transp., Inc. v. Robert McBride*, 131 S. Ct. 2630 (2011) (internal citations omitted).

in question played a substantial part in bringing about or actually causing his injury, and that

the injury was either a direct result or a reason ably probable consequence of the condition.

## PROPOSED JURY INSTRUCTION NO. 16

### CONTRIBUTORY NEGLIGENCE[30]

Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC's,,

contend that Plaintiff, James Minckler, was negligent and that Plaintiff, James Minckler's,

negligence caused or contributed to causing his injury. This is the defense of contributory

negligence. Plaintiff, James Minckler's, negligence will be considered a cause of the injury

if it played a part—no matter how slight—in bringing about his injury.[31] Defendants,

Waterman Steamship Corp. and Seabulk Fleet Management, LLC, have the burden of

proving that Plaintiff, James Minckler, was contributorily negligent.  If Plaintiff, James

Minckler's, negligence contributed to his injury, he may still recover damages, but the

amount of his recovery will be reduced by the extent of his contributory negligence.

A seaman is obligated under the Jones Act to act with ordinary prudence under the

circumstances. The circumstances of a seaman's employment include not only his reliance

---

[30] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) §4.7 [in pertinent part].
[31] *Norfolk S. R.R. v. Sorrell*, 549 U.S. 158 (2007).

on his employer to provide a safe work environment, but also his own experience, training and education. Under the Jones Act, a seaman has the duty to exercise that degree of care for his own safety that a reasonable seaman would exercise in like circumstances.[32]

If you find that Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC's, were negligent, the vessel was unseaworthy, and that the negligence and/or unseaworthiness was a proximate [legal] cause of Plaintiff, James Minckler's, injury, but you also find that the accident was due partly to Plaintiff, James Minckler's, contributory negligence, then you must determine the percentage Plaintiff, James Minckler's, negligence contributed to the accident. You will provide this information by filling in the appropriate blanks in the jury questions. Do not make any reduction in the amount of damages that you award to Plaintiff, James Minckler.  It is my job to reduce any damages that you award by any percentage of contributory negligence that you assign to Plaintiff, James Minckler.

---

[32] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)  (en banc).

**PROPOSED JURY INSTRUCTION NO. 17**

**DAMAGES**[33]

If you find that Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, are liable, you must award the amount you find by a preponderance of the evidence is full and just compensation for all of Plaintiff, James Minckler's, damages. You also will be asked to determine if Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC are liable for punitive damages. Because the methods of determining punitive damages and compensatory damages differ, I will instruct you separately on punitive damages. The instructions I give you now apply only to your consideration of compensatory damages.

Compensatory damages are not allowed as a punishment against a party. Such damages cannot be based on speculation, because compensatory damages must be actual damages to be recoverable. But compensatory damages are not restricted to out-of-pocket losses of money or lost time. Instead, compensatory damages may include mental and physical aspects of injury, tangible and intangible. Compensatory damages are intended to make Plaintiff, James Minckler, whole, or to restore him to the position he would have been in if the accident had not happened.

In determining compensatory damages, you should consider only the following elements, to the extent you find that Plaintiff, James Minckler, has established them by a

---

[33] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) § 4.8 [in pertinent part].

preponderance of the evidence: past and future physical pain and suffering, including physical disability, impairment, and inconvenience, and the effect of Plaintiff, James Minckler's, injuries and inconvenience on the normal pursuits and pleasures of life; past and future mental anguish and feelings of economic insecurity caused by disability; income loss in the past; impairment of earning capacity or ability in the future, including impairment of Plaintiff, James Minckler's, earning capacity due to his physical condition; past medical expenses [unless medical expenses have been paid as cure];  and the reasonable value, not exceeding actual cost to Plaintiff, James Minckler, of medical care that you find from the evidence will be reasonably certain to be required in the future as a proximate result of the injury in question.

If you find that Plaintiff is entitled to an award of damages for loss of past or future earnings, there are two particular factors you must consider. First you should consider loss after income taxes; that is you should determine the actual or net income that Plaintiff, James Minckler, has lost or will lose, taking into consideration that any past or future earnings would be subject to income taxes. You must award the Plaintiff, James Minckler, only his net earnings after tax. This is so because any award you may make here is not subject to income tax. The federal or state government will not tax any amount that you award on this basis.

Second, an amount to cover a future loss of earnings is more valuable to Plaintiff, James Minckler, if he received the amount today than if he received the same amount in the

future. If you decide to award Plaintiff, James Minckler, an amount for lost future earnings, you must discount that amount to present value by considering what return would be realized on a relatively risk free investment and deducting that amount from the gross future earning award.

However, some of these damages, such as mental or physical pain and suffering are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, instead determining what amount that will fairly compensate Plaintiff, James Minckler, for his injuries.

<u>**PROPOSED JURY INSTRUCTION NO. 18**</u>

**COMPENSATORY DAMAGES**[34]

If you find that Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, are liable to Plaintiff, James Minckler, then you must determine an amount that is fair compensation for all of Plaintiff, James Minckler's, damages. These damages are called compensatory damages. The purpose of compensatory damages is to make Plaintiff, James Minckler, whole—that is, to compensate Plaintiff, James Minckler, for the damage that he has suffered. Compensatory damages are not limited to expenses that Plaintiff, James Minckler, may have incurred because of his injury. If Plaintiff, James Minckler, wins, he is entitled to compensatory damages for the physical injury, pain and suffering and mental anguish that he has suffered because of Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC's, wrongful conduct.

You may award compensatory damages only for injuries that Plaintiff, James Minckler, proves were proximately caused by Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC's, allegedly wrongful conduct. The damages that you award must be fair compensation for all of Plaintiff, James Minckler's, damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC. You should not award compensatory damages for speculative injuries, but only for those

---

[34] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) §15.2.

injuries that Plaintiff, James Minckler, has actually suffered or that Plaintiff, James Minckler, is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiff, James Minckler, prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

(1) Physical pain and suffering including physical disability, impairment, and inconvenience, and the effect of the plaintiff's injuries and inconvenience on the normal pursuits and pleasures of life.

(2) Mental anguish and feelings of economic insecurity caused by disability.

(3) Income loss in the past.

(4) Loss of future earnings and impairment of earning capacity or ability in the future, including impairment in the normal progress in the plaintiff's earning capacity due to his physical condition.

(5) The reasonable value, not exceeding actual cost to the Plaintiff, of medical care that you find from the evidence will be reasonably certain to be required in the future as a proximate result of the injury in question.

<u>**PROPOSED JURY INSTRUCTION NO. 19**</u>

**INJURY/PAIN/DISABILITY/DISFIGUREMENT/LOSS OF CAPACITY FOR
ENJOYMENT OF LIFE[35]**

You may award damages for any bodily injury that the Plaintiff, James Minckler, sustained and any pain and suffering, disability, disfigurement, mental anguish, and/or loss of capacity for enjoyment of life that Plaintiff, James Minckler, experienced in the past or will experience in the future as a result of the bodily injury.  No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced.  You are not trying to determine value, but an amount that will fairly compensate Plaintiff, James Minckler, for the damages he has suffered.  There is no exact standard for fixing the compensation to be awarded for these elements of damage.  Any award that you make should be fair in the light of the evidence.

---

[35] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) § 15.3.

## PROPOSED JURY INSTRUCTION NO. 20

### DAMAGES

In addition to Pattern Jury Instruction 4.8, plaintiff submits that the following instruction is appropriate insofar as loss of earning capacity, and should be read in addition to Pattern Jury Charge 4.8:

Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person's potential. Earning capacity is not necessarily determined by actual loss. While the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity. The plaintiff need not be working or even in a certain profession to recover this type of award. What is being compensated is the plaintiff's lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity.

In order to recover for impairment of earning capacity, the plaintiff must prove two things. First, plaintiff must demonstrate that before the incident, plaintiff had a capacity to earn money. Second, plaintiff must show that plaintiff's capacity, if it existed, was diminished through defendant's negligence.

Factors to consider in fixing awards for loss of earning capacity include: age, work life expectancy, appropriate discount rate, the annual wage rate increase, prospects for rehabilitation, probable future earning capacity, loss of earning capacity, and the inflation factor or decreasing purchasing power of the applicable currency.[36]

---

[36] *Gossett v. Wal-Mart Stores, Inc.*, 2007 WL 628116 (E.D.La. 2007).

**PROPOSED JURY INSTRUCTION NO. 21**

## PUNITIVE DAMAGES[37][38]

You may, but are not required to, award punitive damages against a defendant if that defendant has acted willfully and wantonly. The purpose of an award of punitive damages is to punish the defendant and to deter it and others from acting as it did.[39]

A defendant's action is willful or wanton if it is in reckless or callous disregard of, or with indifference to, the rights of the plaintiff. An actor is indifferent to the rights of another, regardless of the actor's state of mind, when it proceeds in disregard of a high and excessive degree of danger that is known to it or was apparent to a reasonable person in its position.[40]

---

[37] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) § 4.9.

[38] Punitive damages are presently available under the Jones Act only if the employer allegedly willfully and wantonly disregarded its maintenance and cure obligation. *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009) (abrogating *Guervara v. Mar. Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995)); see Instruction No. 4.11. At least one court has questioned whether Townsend opens the possibility of punitive damages under the Jones Act. In Townsend, the Supreme Court stated that it was not ad- dressing the dissent's argument that the Jones Act prohibits punitive damages by virtue of its incorporation of the Federal Employers' Liability Act, 46 U.S.C. § 30104(a). See *Wagner v. Kona Blue Water Farms, LLC*, 2010 WL 3566730 (D. Haw. Sept. 13, 2010); see also David Robertson, Punitive Damages in U.S. Maritime Law: Miles, Baker, and Townsend, 70 La. L. Rev. 463 (2010). It should also be noted that the Supreme Court did not address whether the size of punitive damages awards in maintenance and cure cases requires a recovery cap such as that imposed in *Exxon Shipping Co. v. Baker*, 554 U.S 471, 514 (imposing a punitive/ compensatory ratio of 1:1). *Townsend*, 557 U.S. at 424 n.11.

[39] On the general subject of punitive damages and the guidelines to be considered in fashioning jury instructions, *see Exxon Shipping Co. v. Baker*, 554 U.S. 471.

[40] W. Page Keeton et al., *Prosser and Keeton on Torts*, § 34, at 213 (West, 5th ed. 1984).

**PROPOSED JURY INSTRUCTION NO. 22**

**MAINTENANCE AND CURE CLAIMS AND THEIR RELATIONSHIP TO
JONES ACT AND UNSEAWORTHINESS CLAIMS—PUNITIVE
DAMAGES FOR WILLFUL WITHHOLDING OF MAINTENANCE AND CURE[41]**

Plaintiff, James Minckler's, third claim is that, as a seaman, he is entitled to recover maintenance and cure. This claim is separate and independent from both the Jones Act and the unseaworthiness claims of the Plaintiff, James Minckler. You must decide this claim separately from your determination of his Jones Act and unseaworthiness claims.

Maintenance and cure provides a seaman who is disabled by injury or illness while in the ship's service with medical care and treatment and the means of maintaining himself while he is recuperating.

Maintenance and cure is a seaman's remedy. Plaintiff, James Minckler, is a seaman; therefore, you must determine whether he is entitled to maintenance and cure. When there are ambiguities or doubts about a seaman's right to maintenance and cure, you should resolve those ambiguities or doubts in the seaman's favor.[42]

A seaman is entitled to maintenance and cure even though he was not injured as a result of any negligence on the part of his employer or any unseaworthy condition of the vessel. To recover maintenance and cure, Plaintiff, James Minckler, need only show that he suffered injury or illness while in the service of the vessel on which he was employed as a seaman, without willful misbehavior on his part. The injury or illness need not be work-related; it need only occur while the seaman is in the ship's service. Maintenance and cure may not be reduced because of any

---

[41] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) § 4.10.

[42] *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962) ("When there are ambiguities or doubts [regarding maintenance and cure], they are resolved in favor of the seaman."); *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79–80 (5th Cir. 1990) (applying "ambiguities or doubts" rule to find that a treating physician's opinion that contradicted the opinion of the doctor performing the independent medical examination "would require a finding in favor" of the seaman).

negligence on the seaman's part.

The "cure" to which a seaman may be entitled includes the costs of medical attention, including the services of physicians and nurses as well as hospitalization, medicines and medical apparatus. However, the employer has no duty to provide cure for any period during which a seaman is hospitalized at the employer's expense.

Maintenance is the cost of food, lodging, and transportation to and from a medical facility. A seaman is not entitled to maintenance for any period that he is an inpatient in any hospital, because the cure provided by the employer through hospitalization includes the seaman's food and lodging.

A seaman is entitled to receive maintenance and cure from the date he leaves the vessel until he reaches what is called "maximum cure." Maximum cure is the point at which no further improvement in the seaman's medical condition is reasonably expected. If it appears that a seaman's condition is incurable, or that the treatment will not improve a seaman's physical condition but will only relieve pain, [he/she] has reached maximum cure. The obligation to provide maintenance and cure usually ends when qualified medical opinion is to the effect that maximum possible cure has been accomplished.

If you decide that Plaintiff, James Minckler, is entitled to maintenance and cure, you must determine when the employer's obligation to pay maintenance began, and when it ends. One factor you may consider in determining when the period ends is when the seaman resumed his employment, if he did so. If, however, the evidence supports a finding that economic necessity forced the seaman to return to work before reaching maximum cure, you may take that finding into consideration in determining when the period for maintenance and cure ends.

If you find that Plaintiff, James Minckler, is entitled to an award of damages under either the Jones Act or unseaworthiness claims, and if you award him either lost wages or medical expenses, then you may not award him maintenance and cure for the same period. That is because

Plaintiff, James Minckler, may not re- cover twice for the same loss of wages or medical expenses. However, Plaintiff, James Minckler, may also be entitled to an award of damages if Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, failed to pay maintenance and cure when it was due.[43]

Mr. Minckler, as a seaman, has the initial burden of proving the elements of entitlement to the remedies of maintenance and medical cure and unearned wages. To recover maintenance and cure, Plaintiff, James Minckler, need only show that he suffered injury or illness while in the service of the vessel on which he was employed as a seaman, without willful misbehavior on his part. The injury or illness need not be work-related; it need only occur while the seaman is in the ship's service. Maintenance and cure may not be reduced because of any negligence on the seaman's part.[44]

The maintenance and cure duty must be liberally interpreted for the benefit and protection of the seaman, here Mr. Minckler.[45] There is a presumption in favor of entitlement. Doubts as to entitlement, defenses and necessity of medical treatment and attainment of maximum cure are to be resolved by the employer in favor of the seaman, Mr. Minckler.[46]

Waterman Steamship Corp. and Seabulk Fleet Management, LLC have the affirmative duty to promptly investigate any claim for maintenance and cure and they must resolve doubts as to

---

[43] [2]The existence and extent of a double-recovery problem will vary from case to case. Avoiding double recovery requires careful screening of the evidence and a jury charge tailored to fit the evidence presented. For example, if the value of the food or lodging supplied to the seaman by the vessel owner is included in the wage base from which loss of earnings is calculated, then those items must not again be awarded as maintenance. If a jury awards loss of earnings from the date of injury to some date after the end of the voyage, then those same earnings cannot again be awarded as part of maintenance recovery under the ship owner's obligation to provide wages until the end of the voyage. *See Colburn v. Bunge Towing, Inc.*, 883 F.2d 372 (5th Cir. 1989).

[44] 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:31 (6th ed. 2018).

[45] *Vaughan v. Atkinson*, 369 U.S. 527, 531-32; 82 S.Ct. 997, 1000; 8 L.Ed.2d 88 (1962).

[46] *Vaughn v. Atkinson*, 369 U.S. 527, 532, 1962 AMC 1131 (1962); *Johnson v. Marline Drilling Co.*, 873 F.2d 77, 1990 AMC 2460 (5th Cir. 1990); *Morel v. Sabine Towing & Transp. Co., Inc.*, 669 F.2d 345, 1984 AMC 1318 (5th Cir. 1982); *Gaspard v. Taylor Diving & Salvage Co., Inc.* 649 F.2d 372, 1982 AMC 2875 (5th Cir. 1981).

entitlement in favor of the seaman, Mr. Minckler, and promptly pay any amounts due.[47] Waterman Steamship Corp.'s and Seabulk Fleet Management, LLC's obligation to pay maintenance and cure continues until Mr. Minckler is cured or, if there is a permanent impairment, until Mr. Minckler reaches the point of maximum medical recovery.[48]

The test for maximum medical recovery is when it appears probable that further treatment will result in no betterment of Mr. Minckler's condition.[49] In the case of permanent injury, maintenance and cure continues until the seaman's incapacity is diagnosed as being permanent.[50] The operative date for termination of the obligation is the date of medical diagnosis, not the date the diagnosis is memorialized in the form of a medical report or testimony.[51] The point of maximum cure is a *medical* determination, not a legal one. Doubts are to be resolved in favor of the seaman, Mr. Minckler.[52]

After the seaman meets the initial burden of proving entitlement to maintenance and cure, the burden shifts to Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, to prove that maximum cure has been reached.[53] A second opinion contrary to the treating doctor's opinions regarding diagnosis or prognosis of an injured seaman does not provide the unequivocal evidence required for termination of maintenance and cure benefits.[54] Absent an unequivocal justification to terminate a seaman's maintenance and cure, a ship owner may subject itself to liability for punitive damages and attorney's fees if it terminates benefits nonetheless.[55]

---

[47] *Vaughan v. Atkinson*, 369 U.S. 527; 82 S.Ct. 997, 1000; 8 L.Ed.2d 88 (1962).
[48] 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:33 (6th ed. 2018).
[49] 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:33 (6th ed. 2018)
[50] 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:33 (6th ed. 2018)
[51] 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:33 (6th ed. 2018)
[52] 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:33 (6th ed. 2018)
[53] *Weeks Marine, Inc. v. Watson*, 190 F.Supp.3d 588, 597 (E.D. La.2016) (citing Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-33 at 394).

[54] *Gorum v. Ensco Offshore Co.*, No. 02–2030, 2002 WL 31528460, at *6 (E.D.La. Nov. 14, 2002).
[55] *Weeks Marine, Inc. v. Watson*, 190 F.Supp.3d 588, 597 (E.D. La.2016).

A shipowner who has received a claim for maintenance and cure is entitled to investigate the claim. If, after investigating the claim, the shipowner unreasonably rejects it, it is liable for both the maintenance and cure payments it should have made, and for any compensatory damages caused by its unreasonable failure to pay. Compensatory damages may include any aggravation of Plaintiff, James Minckler's, condition because of the failure to provide maintenance and cure.

You may award compensatory damages because the shipowner failed to provide maintenance and cure if you find by a preponderance of the evidence that:

1.  Plaintiff, James Minckler, was entitled to maintenance and cure;

2.  it was not provided;

3.  Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC, acted unreasonably in failing to provide maintenance and cure; and

4.  the failure to provide the maintenance and cure resulted in some injury to Plaintiff, James Minckler.[56]

If you also find that the vessel owner's failure to pay maintenance and cure was not only unreasonable, but was also willful and wanton, that is, with the deliberate intent to do so, you may also award Plaintiff, James Minckler, punitive damages and attorney's fees. You may not award these damages unless the vessel owner acted callously or willfully in disregard of the seaman's claim for maintenance and cure. The purpose of an award of punitive damages is to punish a defendant and to deter the defendant and others from such conduct in the future.

---

[56] *See Morales v. Garijak, Inc.*, 829 F.2d 1355 (5th Cir. 1987) (abrogated on other grounds); *Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995) (abrogated with respect to punitive damages award for wrongful failure to pay maintenance and cure obligation); *Atl. Sounding, Inc. v. Townsend*, 557 U.S. 404.

A plaintiff may not recover attorney's fees for prosecuting Jones Act or unseaworthiness claims. Instead, fees may be recovered only for prosecuting claims that the vessel owner not only failed to pay maintenance and cure, but did so in willful and wanton disregard of the obligation to do so. You may award such attorney's fees only if you find that the vessel owner acted willfully and wantonly in disregarding the vessel owner's obligation to pay maintenance and cure.[57]

---

[57] *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009) (abrogating *Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995)). It should be noted that at least one court has questioned whether *Atlantic Sounding* opens the possibility of punitive damages under the Jones Act by virtue of the Supreme Court's express statement that it did not address the dissent's argument that the Jones Act prohibits the recovery of punitive damages by virtue of its incorporation of the Federal Employers' Li- ability Act, 46 U.S.C. § 30104(a). *See Wagner v. Kona Blue Water Farms, LLC*, 2010 WL 3566730 (D. Haw. Sept. 13, 2010); *see also* David Robertson, *Punitive Damages in U.S. Maritime Law: Miles, Baker, and Townsend*, 70 La. L. Rev. 463 (2010).

## **PROPOSED JURY INSTRUCTION NO. 23.**

## **MITIGATION OF DAMAGES[58]**

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate his/her damages, that is, to avoid or to minimize those damages. If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find that the defendant proved by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages that he would have avoided had he taken advantage of the opportunity. You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages that the plaintiff could have mitigated.

In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

---

[58] Fifth Circuit Pattern Jury Instructions 2020 (Civil Cases) § 15.5.