UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JAMES MINCKLER          *     NO: 20-1173
                                        *
VERSUS                       *
                                        *     SECTION: G
WATERMAN STEAMSHIP     *     JUDGE NANNETTE JOLIVETTE
                                        *     BROWN
CORPORATION, ET AL        *     JUDGE DONNA PHILLIPS CURRAULT
*********************************************************************

## JOINT PRE-TRIAL ORDER

## I.

## PRE-TRIAL CONFERENCE

A Pre-Trial Conference is scheduled for February 24, 2022 at 3:00 P.M..

## APPEARANCE OF COUNSEL:

**A.**     TIMOTHY J. YOUNG
       JOSEPH B. MARINO, III
       MEGAN C. MISKO
       TAMMY D. HARRIS
       The Young Firm
       400 Poydras St., Suite 2090
       New Orleans, LA  70130
       Telephone:  (504) 680-4100
       Fax:  (504) 680-4101
       tjy@theyoungfirm.com
       jbm@theyoungfirm.com
       *Counsel for plaintiff, James Minckler*

**B.**     Thomas P. Baynham (16805)
       Hansford P. Wogan (34825)
       Sara B. Kuebel (38305)
       Andrew V. Waters (37913)
       Jones Walker LLP
       201 St. Charles Avenue, 48th Floor
       New Orleans, Louisiana 70170-5100
       Telephone:    (504) 582-8323
       Facsimile:    (504) 589-8323
       E-Mail:        tpbaynham@joneswalker.com

fwogan@joneswalker.com
skuebel@joneswalker.com
awaters@joneswalker.com

Counsel for Defendants, Waterman Steamship Corp. and
Seabulk Fleet Management, LLC

## III.
## DESCRIPTION OF THE PARTIES

**Plaintiff, James Minckler**:

Plaintiff is James Minckler, an American Citizen residing in the Philippines, and a person

of the full age of majority and who has made claims against all defendants for Jones Act negligence

and general maritime law negligence and unseaworthiness.

**Defendants, Waterman Steamship Corp. and Seabulk Fleet Management, LLC**

Defendants were at all relevant times, the owner/operator of the OCEAN GIANT, a cargo

ship on which the accident occurred.  At all relevant times, defendants employed plaintiff as a

Bosun assigned to the OCEAN GIANT.

## IV.
## JURISDICTION:

This Court has jurisdiction over this matter under the Jones Act, 46 U.S.C. §30104, et seq.

and the Court's admiralty jurisdiction, 28 U.S.C §1333, as the incident at issue in this matter

occurred while plaintiff, a Jones Act seaman, was aboard a vessel that was upon navigable waters.

Venue is appropriate pursuant to 28 U.S.C. §1391 (b)(2).  Jurisdiction and venue are not contested.

## V.

## PENDING MOTIONS:

**Plaintiff:**

There are currently no motions pending.  Plaintiff anticipates filing a motion to strike some

of the testimony of Dr. Eric George, defendants' medical expert on the grounds that Dr. George provides a speculative opinion on the 'possible' result plaintiff may achieve if he undergoes a loosening of his finger ligaments and scar tissue. Dr. George has no idea of the 'probability' of success in this particular patient and any testimony that a future procedure will lift all restrictions is rank speculation. Alternatively, Plaintiff would ask that the trial be briefly continued such that Dr. Henderson can perform the minor procedure recommended by Dr. George and the trial may then proceed with the Plaintiff's actual long term medical condition known to the jury.

**Defendants:**

There are currently no motions pending. Defendants reserve the right to file motion as allowed by the Federal Rules of Civil Procedure, this Court's local rules and this Court's Scheduling Order.

**VI.**
**<u>BRIEF SUMMARY OF MATERIAL FACTS CLAIMED:</u>**

This is a Jones Act negligence and unseaworthiness claim filed by Plaintiff James Minckler against his former employer Seabulk/Waterman Steamship. Mr. Minckler is an American citizen living in the Philippines. On February 1, 2020, Mr. Minckler's left dominant hand was crushed when the large ocean-going cargo vessel owned and operated by his employer lowered the hatch cover on his hand. Mr. Minckler had joined the vessel on October 24, 2019 and was working as a Bosun. On the date of the accident, the vessel was delivering supplies to the U.S. Antarctic base at McMurdo Sound, Antarctica. The cargo holds had covers on them which could be opened and closed by a hydraulic system. The covers on the #2 cargo hold needed to be repositioned to allow more accessibility to the hold. During this repositioning, hatch leaf #6 had to be placed in its stowed position. While attempting to do this, the vessel crew was unable to properly seat the hatch

leaf for an unknown reason. The Second Mate radioed the Chief Mate to inform him of the problem. The Chief Mate left his office to join the crew and troubleshoot the problem. Mr. Minckler had recently come on duty and the Second Mate asked that he assist in trying to identify the reason the hatch leaf was not properly seating. Mr. Minckler was working in the area of the hatch with his immediate supervisor who was in charge of the job. At the direction of his supervisor, Mr. Minckler was checking for any obstructions as to why the hatch cover was not lowering in place properly. It was later determined that the hatch cover was getting jammed on a small metal "container bridge", a piece of equipment that fell into the tracks of the hatch cover. As Mr. Minckler was checking for obstructions on the hatch cover track, the cover came down on Mr. Minckler's hand when the hydraulics holding the cover up failed due to the leaking of pressure out of the hydraulic system. Mr. Minckler suffered severe injury to his left, dominant hand. Mr. Minckler has endured multiple invasive and surgical procedures to attempt to treat his hand. Mr. Minckler was taken to the hospital at McMurdo Station for emergency treatment. Mr. Minckler was later transferred to Christchurch Hospital in New Zealand where he underwent additional treatment. Mr. Minckler has limited use of his dominant hand as it is now stuck in a claw like shape.

## VII.
## UNCONTESTED MATERIAL FACTS

1. At all material times, plaintiff was employed by defendants as a Bosun aboard the OCEAN GIANT.

2. At all material times, defendants owned and operated the OCEAN GIANT.

3. At all material times, plaintiff was a member of the crew of the OCEAN GIANT, a vessel in navigation.

4. At all material times, plaintiff qualified as seaman for purposes of the Jones Act.

5. On February 1, 2020, James' left dominant hand was crushed when the large ocean-

going cargo vessel owned and operated by his employer lowered the hatch cover on his hand.

6. James had been working in the area of the hatch with his immediate supervisor who was in charge of the job.

7. At the direction of his supervisor, James was checking for any obstructions as to why the hatch cover was not lowering in place properly.

8. It was later determined that the hatch cover was getting jammed on a small metal "container bridge", a piece of equipment that should never hand been allowed to fall into the tracks of the hatch cover.

9. The cover fell on James' hand when the hydraulics holding the cover up failed due to the leaking of pressure out of the hydraulic system.

10. Defendants knew of the leaking hydraulic system for some period of time and never fixed it, and as a result, the hatch covers would not stay suspended 'open'.

11. To 'cure' this known problem, the defendants started to use blocks to force the covers to remain open due to the failing hydraulics.

12. A JSA held before the job never mentioned that the cover could suddenly fall if the hydraulic system happened to leak pressure at that moment.

13. James was not experienced in working with this defective hatch cover.

14. James had started working with defendant approximately 3 months before his injury and this hatch cover is opened and closed only when the ship is in port.

15. This cover fell only due to a malfunctioning of the hydraulic system, and the fact that the prior crew failed to properly block the cover in the open position.

16. The JSA prior to the job never mentioned the hatch cover's defects and the fact that

it could suddenly and without warning fall.

17.       James' direct supervisor and the Chief Mate of the ship was standing right next to him and directing the job.

18.       James had worked as a merchant mariner for 18 years before this accident.

19.       He is 48 years old.

## VIII.
## CONTESTED ISSUES OF FACT:

1.       Whether the defendants were negligent in any way;

2.       Whether the M/V OCEAN GIANT was unseaworthy;

3.       The cause, nature, duration and extent of plaintiff's injuries;

4.       The extent of plaintiff's past and future economic loss;

5.       The extent of plaintiff's past and future medical expenses;

6.       The extent of plaintiff's general and special damages;

7.       The amount of maintenance and cure owed to plaintiff;

8.       Whether the area where plaintiff put his hand was a pinch point;

9.       Whether plaintiff has unreasonably failed to seek medical care;

10.      Whether plaintiff's actions in placing his hand in a pinch point constituted comparative fault;

11.      Whether plaintiff had become aware of potential problems with the hatch covers during his approximately three months on the vessel

12.      The extent of plaintiff's injuries

13.      Whether plaintiff can return to work as a Bosun

14.      Whether plaintiff's medical condition has grown worse due to his failure to seek medical care

15.      Whether plaintiff failed to perform home exercises;

16. Whether plaintiff's finger immobility was caused in whole or in part by his failure to perform home exercises;

17. Whether medical care was available to plaintiff in the Philippines;

18. The extent of plaintiff's future medical expenses;

19. This was the first time James had been asked to assist in working with the hatch covers on this vessel, and his immediate supervisor, the Chief Mate, was in charge of the job and standing right near James.

20. This was the first time James had worked on this particular cover.

21. Whether defendants use of blocks to force the covers to remain open due to the failing hydraulics was documented in a root cause analysis report as a dangerous and unsafe practice.

22. Moreover, the hatch cover was not a 'pinch point.'

23. A pinch point is a known area that an employee expects to potentially tighten down.

24. Immediately following the accident Plaintiff had surgery done and a pin was placed inside his ring finger and a plate was placed inside the back side of his hand for support.

25. This pin and plate remain in his hand.

26. He has extremely limited use of his dominant hand as it is now stuck in a claw like shape.

27. Plastic surgeon Dr. Daryl Henderson has recommended that to achieve greater use of his left hand, James should undergo a ray resection of his small and ring fingers.

28. While this will lessen the strength of his hand, it will remove the fingers which are essentially getting in the way of any tasks he attempts.

29.    A psychologist has diagnosed Mr. Minckler with PTSD as a result of the accident and injury.

30.    At the time of the injury, he was being paid about $9,000 a month by Seabulk/WS, for an annual wage base of about $108,000.

31.    James has little to no transferable skills given his lack of formal education and his career spent on vessels.

32.    Whether defendants provided adequate medical care to plaintiff following the accident.

33.    All issues of fact inherent in the summary of material facts or contested issues of law.


## IX.
## CONTESTED ISSUES OF LAW

1.    Whether defendants were negligent under the Jones Act;

2.    Whether the M/V OCEAN GIANT was unseaworthy;

3.    Whether any negligence of the defendants caused plaintiff's injuries and damages;

4.    Whether plaintiff was contributorily negligent and, if so, by what degree of comparative fault;

5.    Whether the unseaworthiness of the OCEAN GIANT was a substantial cause of plaintiff's injuries;

6.    Whether defendants owe maintenance and cure to plaintiff;

7.    The legal cause(s) of plaintiff's injuries and damages;

8.    Whether the maintenance rate paid by defendants ($20/day) was legally sufficient since the rate had been negotiated by plaintiff's Union.

9.    Whether defendants failed to provide adequate health care to plaintiff after the accident and if so whether that failure was negligent and a legal cause of plaintiff's damages.

10. All contested issues of law inherent in the foregoing statement of contested facts or summary of material facts.

## X.
## EXHIBITS

| PLAINTIFF | | OBJECTIONS |
|---|---|---|
| 1. | A complete copy of any and all medical records, films, bills, invoices, test results or other documents relating in any way to previous medical treatment received by plaintiffs at any time in the past, including, but not limited to, the injuries which form the basis of this suit. | |
| 2. | Deck Logs – OCEAN GIANT   January 15, 2020 to February 15, 2020. | |
| 3. | Engine Room Logs – OCEAN GIANT January 15, 2020 to February 15, 2020 | |
| 4. | Bell Book – January 15, 2020 to February 15, 2020 | |
| 5. | Photograph – Bridge Fitting After Removal | |
| 6. | Photograph – Hatch in Up Position | |
| 7. | JSAs produced by defendants | |
| 8. | Minckler Familiarization Checklist | |
| 9. | Photographs– Minckler Accident Area | |
| 10. | OCEAN GIANT Training Records | |
| 11. | Plaintiff's Personnel File | |
| 12. | Plaintiff's Earning records | |
| 13. | Final Incident Report | |
| 14. | Draft/preliminary versions of Incident Report | |
| 15. | Incident Notification emails | |
| 16. | Incident Reporting emails | |
| 17. | Defendant's Report for SeaCor Holdings | |
| 18. | United States Coast Guard Accident Report regarding Minckler accident | |
| 19. | Communications/texts between plaintiff and SEACOR produced by defendants | |
| | OCEAN GIANT Medical Log | |
| | Safety Meeting Reports (December 1, 2019-March 3, 2020) | |
| | Operations Manual for Hatch Covers | |

| | | |
|---|---|---|
| | Maintenance Instructions for Hatch Covers | |
| 20. | SMS:  Cargo Hold Preparation Checklist | |
| 21. | SMS:  Cargo and Ballast Planning | |
| 22. | SMS:  Deck Setup and Inspection | |
| 23. | SMS:  Standing Orders for the Cargo Watch | |
| 24. | SMS:  Cargo Operation Records | |
| 25. | SMS:  Planned Maintenance Program | |
| 26. | SMS:  Hatch Cover Maintenance | |
| 27. | Seabulk contributions spreadsheet | |
| 28. | Crew List of OCEAN GIANT | |
| 29. | Records of service requests on hatch covers | |
| 30. | Coast Guard Inspection Reports | |
| 31. | Photographs of plaintiff's injuries and hand | |
| 32. | Photographs produced by Richard Crowell during his deposition in this matter | |
| 33. | Photographs of bridge fitting after removal | |
| 34. | Correspondence between plaintiff and defendants regarding accident | |
| 35. | Seabulk personnel file of Richard Crowell | |
| 36. | Seabulk personnel file of Jamila I. King | |
| 37. | Seabulk personnel file of Leo Madden | |
| 38. | Seabulk personnel file of John Hawkins | |
| 39. | Written job description for Chief Mate | |
| 40. | Written job description for Deck Officer | |
| 41. | Written job description for Deck Rating | |
| 42. | Written job description for Steward | |
| 43. | Plaintiff's W-2 forms for 2011 – 2019 | |
| 44. | Plaintiff's 2019 Pension Employment Contributions | |
| 45. | Final payroll vouchers from Maersk for 2013 – 2016 | |
| 46. | Overtime report for December 28, 2019 – January 14, 2020 | |
| 47. | Plaintiff's vacation check stubs for 2011 – 2020 | |
| 48. | All exhibits attached to the deposition of James Minckler | |
| 49. | All exhibits attached to the deposition of | |

| | | |
|---|---|---|
| | Leo Madden | |
| **50.** | All exhibits attached to the deposition of Richard Crowell | |
| **51.** | A complete copy of any and all medical records, reports, films, bills, invoices, test results or other documents from Dr. Darrell Henderson regarding the injuries which form the basis of this suit. | |
| **52.** | A complete copy of any and all medical records, reports, films, bills, invoices, test results or other documents from Dr. Eric Rivas Physician Advisor Future Care, Inc | |
| **53.** | A complete copy of any and all medical records, reports, films, bills, invoices, test results or other documents from Dr. Richard Lloyd, surgeon, Canterbury Hospital | |
| **54.** | A complete copy of any and all medical records, reports, films, bills, invoices, test results or other documents from Christchurch Hospital | |
| **55.** | A complete copy of any and all medical records, reports, films, bills, invoices, test results or other documents from United States Antarctic Program, McMurdo Station | |
| 56. | Two photographs of plaintiff in hospital room after accident | |
| **57.** | Email chain between plaintiff and Dr. Eric Rivas regarding scheduling appointments for medical care with photograph of plaintiff's hand attached dated March 4, 2020 through March 10, 2020 | |
| 58. | Email chain between plaintiff and Dr. Rivas regarding disability insurance form to be completed, dated June 11, 2020 | |
| 59. | Email chain between plaintiff and Dr. Rivas regarding appointments, dated February 26, 2020 through March 4, 2020 | |
| | | |
| **DEFENDANT** | | **OBJECTIONS** |
| **1.** | Incident Report | |

| | | |
|---|---|---|
| **2.** | Maintenance and Cure Log | |
| **3.** | Personnel files of Madden and Crowell | |
| **4.** | Standard Club Certificate of Entry | |
| **5.** | Seabulk Contribution Report | |
| **6.** | Minckler Wage Vouchers | |
| **7.** | Crew List | |
| **8.** | Minckler Personnel File | |
| **9.** | Initial Notification of Injury | |
| **10.** | Incident Reporting – Levels Update | |
| **11.** | Witness Statements | |
| **12.** | Photos of Mr. Minckler's hand | |
| **13.** | E-Mails to/from Mr. Minckler's following accident | |
| **14.** | Coast Guard 2692 | |
| **15.** | OCEAN GIANT Medical Log | |
| **16.** | Medical Records from Christchurch Hospital | |
| **17.** | Medical Records from McMurdo Station | |
| **18.** | Vessel Logs | |
| **19.** | Communications between defendants and plaintiff following accident | |
| **20.** | Communications between defendants and plaintiff's fiancé after accident | |
| **21.** | OCEAN GIANT Safety Meeting Reports | |
| **22.** | OCEAN GIANT Inspection Reports | |
| **23.** | Ocean Giant JSA Reports | |
| **24.** | Hatch cover drawings | |
| **25.** | Job Descriptions – Vessel Crew | |
| **26.** | Photos of OCEAN GIANT taken after accident | |
| **27.** | Deck Logs of OCEAN GIANT | |
| **28.** | Engine room logs of OCEAN GIANT | |

| 29. | Bell Book | |
|---|---|---|
| 30. | Hatch cover manuals | |
| 31. | SMS Manual | |
| 32. | Coast Guard Inspections | |
| 33. | Minckler Crew familiarization checklist | |
| 34. | Any exhibits listed or used by plaintiff | |
| 35. | Any additional documents obtained through ongoing discovery | |
| 36. | All medical records including X-rays and hospital records | |
| 37. | Report of Dr. Eric George | Hearsay |
| 38. | Records of Dr. Kevin Greve | Hearsay |
| 39. | Any exhibit attached to any deposition | |
| 40. | Any records of plaintiff's employers | |
| | | |
| | | |
| | | |
| | | |

## DEPOSITION TESTIMONY:

All parties reserve the right to offer into evidence the deposition of any witness beyond the subpoena power of this Honorable Court and/or any other witness unavailable for trial, or any witness whose deposition has been taken in this matter, as permitted by the Federal Rules of Civil Procedure. Plaintiff and Defendants reserve the right to introduce into evidence the following depositions:

1. Deposition of Leo Madden taken March 18, 2021

2. Deposition of Richard Crowell taken March 18, 2021

3. Any witness who is unavailable for trial or outside the subpoena power of the Court.

## XII.
## CHARTS, GRAPHS, MODELS, ETC.:

All parties reserve the right to use charts, graphs, drawings, models, photographs, and other materials during argument. The parties will submit their demonstrative exhibits to opposing counsel at least five days prior to trial as required by the Court's Scheduling Order.

## XIII.

## WITNESS LIST:

**Plaintiff:**

**WILL CALL:**

1. James Minckler, 081 San Isidro Street, Dinalupihan Bataan, Philippines
   Fact witness to testify concerning all facts surrounding the accident, his injuries, his medical treatment, his damages, and all other issues relevant to the claims asserted by him in this litigation.

2. Emmalou Sazon, 081 San Isidro Street, Dinalupihan Bataan, Philippines
   Fact witness to testify concerning how the accident made basis of this litigation has affected plaintiff.

3. G. Randolph Rice, Ph.D. – economist to provide expert testimony concerning the present day value of plaintiff's loss of past and future wages, fringe benefits and other financial losses as a result of plaintiff's injury and subsequent restrictions.

4. Thomas Meunier - vocational rehabilitation counselor to provide expert testimony concerning loss of wage earning capacity sustained by plaintiff, plaintiff's vocational assessment for future employment including areas of employment and plaintiff's wage earning capacity in light of his injury, surgery, additional surgeries needed, background, area in which he lives and physical limitations.

5. Dr. Darrell Henderson - Expert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for future medical surgeries, cost for past and future medical expenses, and any other relevant medical issues concerning

plaintiff's medical treatment or physical condition. Dr. Henderson will testify regarding plaintiff's need for additional surgical treatment which may involve amputation with reattachment of the severely damaged left ring finger and any restrictions regarding returning to work.

6.    Gregg Perkin, Engineering Partners International, LLC, Kingwood, Texas – safety expert to provide expert testimony concerning all issues of negligence, liability, dangerous acts, actions below the standard of care in the industry and all issues of negligence or liability on the part of the defendants as well as any alleged comparative fault on the part of plaintiff.

7.    Edward Shwery, PhD – Psychology and Neuropsychology expert to provide expert testimony concerning the neuropsychological and emotional injuries sustained by plaintiff including psychological evaluations and diagnoses, psychological treatment, current and future psychological restrictions, causation opinions, past psychological treatment, need for future psychological, cost for past and future treatment expenses, any other relevant medical issue concerning plaintiff's psychological treatment or psychological or mental condition. Dr. Shwery will testify regarding his diagnoses of plaintiff, including Post Traumatic Stress disorder, Major Depressive Disorder and Somatic Symptom Disorder, predominantly pain and any restrictions regarding returning to work.

8.    Leo Boucher Madden, Second Mate (VIA DEPOSITION)
Fact witness to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages.

9.    Richard Collier Crowell, Chief Mate (VIA DEPOSITION)
Fact witness to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages.

10.    Jamila I. King, Able Body Seaman (address unknown)
Fact witness to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or

a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages.

## MAY CALL

11.     Garrett Perkin, Engineering Partners International, LLC, Kingwood, Texas – safety expert to provide expert testimony concerning all issues of negligence, liability, dangerous acts, actions below the standard of care in the industry and all issues of negligence or liability on the part of the defendants as well as any alleged comparative fault on the part of plaintiff.

12.     Captain John D. Hawkins (address unknown)
Fact witness to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages.

13.     A duly authorized representative of Waterman Steamship Corporation.

14.     A duly authorized representative of Seabulk Fleet Management, LLC.

15.     Dr. Dean L. Winslow, McMurdo General Hospital, McMurdo Station-Antarctica (VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

16.     Dr. Colin Waugh, McMurdo General Hospital, McMurdo Station-Antarctica (VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

17.     Dr. Gaku Ozawa, Christchurch Hospital, 2 Riccarton Ave., Christchurch Central City, Christchurch 8011, New Zealand (VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

18.     Dr. Krautz, Burwood Hospital, 300 Burwood Rd., Burwood, Christchurch 8033, New Zealand (VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

19.     Dr .Ana DeCenticeo, Unihealth-Baypointe Hospital and Medical Center, Subic Bay, Freeport Zone, Olongapo, 2222 Zambales;

(VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

20.     Dr. Richard Lloyd, McMurdo General Hospital, McMurdo Station-Antarctica (VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

21.     Dr. Duy Nguyen, McMurdo General Hospital, McMurdo Station-Antarctica (VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

22.     Dr. Alex Malone, McMurdo General Hospital, McMurdo Station-Antarctica (VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

23.     Dr. Jonathan Sharr, McMurdo General Hospital, McMurdo Station-Antarctica (VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

24.     Dr. Philip Brown, McMurdo General Hospital, McMurdo Station-Antarctica (VIA DEPOSITION) Testimony regarding medical treatment received by plaintiff subsequent to the accident made basis of this litigation.

25.     Any witness called by any other party.

26.     Any witness identified in further discovery.

**Defendants:**

**WILL CALL:**

1.     James Minckler
   081 San Isidro Street
   Dinalupihan Bataan, Philippines
   On Cross-Examination

2.     Richard Collier Crowell, II
   255 Ewing Terrance
   San Francisco, California 94118
   Chief Mate of the OCEAN GIANT at the time of the accident in question who will testify concerning the facts and circumstances of the accident and the policy and procedures of the company and the vessel (either live or by deposition)

3.     Leo Madden
   465 Dauphin Street
   Mobile, Alabama
   Second mate at the time of the accident in question who will testify about the

accident in question who will testify about the accident as well as policy and procedures onboard the vessel in question (either live or by deposition)

4.     Dr. Eric George
    4228 Houma Boulevard
    Metairie, Louisiana
    Hand surgeon who will testify as per his expert report

5.     Dr. Kevin Greve
    2901 North I-10 Service Road
    Metairie, Louisiana
    Neuropsychologist who will testify as per his expert report

6.     Mr. Todd Capielano
    3501 North Causeway Boulevard
    Metairie, Louisiana
    Vocational rehabilitation expert who will testify as per his expert report

7.     Mr. John Page
    1315 Exposition Boulevard
    New Orleans, Louisiana 70118
    A consulting accountant who will testify as per his expert report

## MAY CALL:

8.     Captain John Hawkins
    Master of the OCEAN GIANT
    May testify concerning the facts and circumstances of the accident in suit.

9.     A corporate representative of Defendant,
    Waterman Steamship Corporation
    Will testify as to the facts and circumstances surrounding the accident and the policies and procedures of the company and the OCEAN GIANT

10.     A corporate representative of Defendant,
    Seabulk Fleet Management, LLC
    Will testify as to the facts and circumstances surrounding the accident and the policies and procedures of the company and the OCEAN GIANT

11.     Dr. Dean L. Winslow
    McMurdo General Hospital
    Antarctica
    Will testify concerning plaintiff's medical treatment following the accident

12.     Dr. Colin Waugh
    McMurdo General Hospital
    Antarctica
    Will testify concerning plaintiff's medical treatment following the accident

13.     Dr. Garu Ozana
    Christchurch Hospital
    Christchurch, New Zealand
    Will testify concerning plaintiff's medical treatment following the accident

14.     Dr. Krautz
    Christchurch Hospital
    Christchurch, New Zealand
    Will testify concerning plaintiff's medical treatment following the accident

15.     Dr. Ana Decenticeo
    Unihealth-Baypointe Hospital
    Subic Bay, Freeport Zone
    Olongapo Zambales, Philippines
    Will testify concerning plaintiff's medical treatment following the accident

16.     Dr. Eric Rivas
    Physician Advisor
    Future Care, Inc.
    Will testify concerning plaintiff's medical treatment following the accident

17.     Any witness listed by plaintiff

18.     Any witness identified in further discovery


The parties' witness lists were filed in accordance with the Federal Rules of Civil Procedure and prior court orders.

## XIV.
## JURY/NON-JURY STATEMENT:

This matter is a jury case. The jury trial is applicable to all aspects of the case. Proposed jury instructions, special jury interrogatories, trial memorandum, and any special questions that the Court is asked to put to prospective jurors on voir dire shall be electronically filed with the Court not later than seven working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

## XV.
## <u>LIABILITY:</u>

The issue of liability will not be tried separately from that of quantum.

## XVI.
## <u>OTHER MATTERS:</u>

None.

## XVII.
## <u>TRIAL:</u>

This matter is set for trial on March 14, 2022 at 8:30 A.M. Trial is expected to last 3-4 days.

## XVIII.
## <u>PRE-TRIAL ORDER STATEMENT:</u>

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel or corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

## XIX.

## <u>POSSIBILITY OF SETTLEMENT:</u>

Possibility of settlement of this case has been considered through mediation with Richard Hymel on February 14, 2022 and a settlement conference with the Magistrate Judge on February 17, 2022.

## XX.

## <u>SIGNATURES</u>:

New Orleans, Louisiana this_____11th_____ day of _____March_____, _____2022_____.


_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

Respectfully submitted,

_____/s/ Joseph B. Marino, III_____
TIMOTHY J. YOUNG (22677)
TAMMY D. HARRIS (29896)
MEGAN C. MISKO (29803)
JOSEPH B. MARINO, III (29966)
The Young Firm
400 Poydras Street, Suite 2090
New Orleans, Louisiana 70130
Telephone (504) 680-4100
tjy@theyoungfirm.com
tdh@theyoungfirm.com
mcm@theyoungfirm.com
jbm@theyoungfirm.com
*Attorneys for Plaintiff*

And

*/s/ T. Patrick Baynham*
T. PATRICK BAYNHAM (16805)
HANSFORD P. WOGAN (34825)
SARA B. KUEBEL (38305)
Jones Walker LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana  7017-5100
Telephone:      (504) 582-8323
Facsimile:      (504) 589-8323
E-Mail:          tpbaynham@joneswalker.com
                 fwogan@joneswalker.com
                 skuebel@joneswalker.com
Attorneys for Defendants,
Waterman Steamship Corporation and
Seabulk Fleet Management, LLC